UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEONARD S.,

                                                                                          DECISION AND ORDER

                               Plaintiff,

                                                                                         19-CV-1480L

                             v.

ANDREW SAUL,
Commissioner of Social Security,

                               Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On December 30, 2015, plaintiff, then thirty-two years old, filed an application for supplemental security income ("SSI"), alleging an inability to work since June 1, 2014. (Administrative Transcript, Dkt. #6 at 16). That application was initially denied. The plaintiff requested a hearing, which was held via videoconference on September 20, 2018 before administrative law judge ("ALJ") Jonathan P. Baird. The ALJ issued an unfavorable decision on October 25, 2018, finding plaintiff not disabled. (Dkt. #6 at 16-26). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 5, 2019. (Dkt. #6 at 1-4).

The plaintiff has moved for remand of the matter for further administrative proceedings (Dkt. #9), and the Commissioner has cross moved (Dkt. #12) for judgment on the pleadings,

pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records relating to arthritis of the bilateral hips, HIV, anxiety, major depressive disorder, and post-traumatic stress disorder ("PTSD"), which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6 at 18).

In applying the special technique for mental impairments, the ALJ found that plaintiff has a mild limitation in understanding, remembering or applying information, a moderate limitation in social interaction, a moderate limitation in concentration, persistence and pace, and a mild limitation in adapting and managing himself.

On consideration of the entire record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with no more than occasional climbing of ramps or stairs, and no climbing of ladders, ropes or scaffolds. Plaintiff can occasionally stoop, kneel, crouch or crawl, and can frequently reach overhead with his left upper extremity. He must avoid exposure to extreme cold, wetness, poorly ventilated areas, and pulmonary irritants. He is limited to simple, routine and repetitive tasks with no detailed instructions. He must work in a low

stress job, defined as one involving no more than occasional decision making or changes in the work setting. He cannot perform production pace work, and can have no more than occasional interaction with the public. (Dkt. #6 at 21-22).

When provided with this RFC as a hypothetical at the hearing, vocational expert Ralph E. Richardson testified that such an individual could perform the representative light, unskilled positions of hand packer, marker and mail clerk. (Dkt. #6 at 25). The ALJ accordingly found plaintiff not disabled. This appeal followed.

I.     The ALJ's Reliance On A "Stale" Consultative Mental RFC Opinion

Plaintiff initially argues that the ALJ erred when he granted "some" weight to the opinion of consulting psychologist Dr. Susan Santarpia. Dr. Santarpia examined plaintiff on April 27, 2016, and noted "depressive" symptomology including loss of interest, social withdrawal and irritability. She observed that plaintiff was cooperative, related adequately, was well-groomed, exhibited adequate speech and coherent and goal-directed thought, and displayed appropriate effect, with orientation x3, intact attention and concentration, fair insight and fair judgment. (Dkt. #6 at 425-28). She opined that plaintiff was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and deal with stress within normal limits. (Dkt. #6 at 427).

The ALJ found that Dr. Santarpia's opinion was "generally consistent with the claimant's treatment notes," but opted, "out of an abundance of caution," to impose *greater* limitations than Dr. Santarpia opined in the areas of interacting with others, and performing complex and detailed work. (Dkt. #6 at 23, 425-28). Plaintiff claims that the ALJ should not have relied on Dr. Santarpia's opinion at all, because it was "stale," having been rendered prior to July 2017, when

plaintiff experienced a decline in his mental health following the unexpected death of his sister, and assumed care of his infant niece.

I do not find that the ALJ's partial reliance on Dr. Santarpia's opinion was misplaced. "For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes 'indicat[ing] a claimant's condition has deteriorated' over that period." *Ambrose-Lounsbury v. Saul*, 2019 U.S. Dist. LEXIS 138905 at *7 (W.D.N.Y. 2019) (alteration in original).

Initially, despite plaintiff's understandable grief in facing the unexpected loss of a close family member, the objective findings and symptoms described in his mental health treatment notes from the months that followed are entirely consistent with the objective findings and symptoms noted by Dr. Santarpia, upon which her opinion was based.

On September 14, 2017, plaintiff reported that he was grieving his sister's unexpected death, and wished to begin mental health treatment to resolve his symptoms, including loss of interest in doing things, feeling down, difficulty sleeping, changes in appetite, occasional trouble concentrating, and some difficulty functioning. (Dkt. #6 at 973-74). He was nonetheless well-groomed, with a cooperative attitude, depressed mood, congruent affect, normal speech, oriented x3, with appropriate and logical thoughts, fair insight and fair judgment. (Dkt. #6 at 549-50).

On November 9, 2017, plaintiff reported to his therapist that although he'd "always battled with depression," it "ha[d] gotten so much worse" since his sister died. (Dkt. #6 at 967). Plaintiff denied any trouble making decisions or suicidal ideation, and his therapist found that he continued to be pleasant, cooperative and friendly, with an anxious mood and congruent effect, normal

speech, oriented x3, appropriate and logical thinking, fair insight and fair judgment. (Dkt. #6 at 573).

At a follow-up mental status exam on January 17, 2018, plaintiff's therapist rated his attitude as cooperative, pleasant and polite, with depressed mood, congruent affect, normal speech, oriented x3, appropriate and goal-directed thinking, impaired insight and fair judgment. (Dkt. #6 at 583-84). On July 18, 2018, plaintiff reported that "his mood has been a lit[t]le more down but [he] is using coping techniques to his satisfaction. Feels the counseling [is] going 'pretty well' . . . reports that he is not really depressed[,] he is grieving the loss of his sister . . . his already existing depression and anxiety were exacerbated [by her death]." He was noted to be pleasant and cooperative, with depressed and irritable mood, congruent affect, normal speech, oriented x3, with organized, appropriate and goal-directed thinking, fair insight and fair judgment. (Dkt. #6 at 1009-11).

Treatment records from visits to plaintiff's primary care physician in the months after July 2017 similarly describe plaintiff as alert, oriented, cooperative, and pleasant, with no observed mental health deficiencies. *See* Dkt. #6 at 644-46 (August 21, 2017 treatment note signed by treating primary care doctor Dr. Fatai Gbadamosi: "[r]eports stress and family stress, but denies anxiety, difficulty concentrating, depression . . . well behaved and cooperative . . . Alert and oriented x3. No deficits noted . . . No apparent anxiety, depression or agitation. Affect is normal."); 637-43 (March 5, 2018 treatment note signed by Dr. Gbadamosi: "[plaintiff] is completely enthralled with raising his sister's daughter . . . He is saddened when he thinks of his sister's sudden death, however, he is completely committed to turning his grief into a plus by ensuing his sister's daughter has a completely loving and supportive home . . . Alert and oriented x3 . . .").

In sum, while it is clear that plaintiff was deeply shocked and saddened by his sister's death, the evidence of record does not support a finding that plaintiff's mental health significantly deteriorated thereafter to an appreciable, objective and lengthy degree, such that Dr. Santarpia's opinion – rendered on the basis of objective findings that mirrored those of plaintiff's therapists and treating primary care physician in and after July 2017 – was rendered stale or irrelevant by that event.

Furthermore, in assessing plaintiff's mental health and limitations, the ALJ's consideration of plaintiff's ability to provide a secure and loving home his infant niece, as well as to shop, clean, and do laundry and yardwork, was entirely appropriate. *See Tricario v. Colvin*, 681 Fed. App'x 98, 100-101 (2d Cir. 2017)(ALJ appropriately considered plaintiff's daily activities in assessing medical opinion evidence)(unpublished opinion); *Krull v. Colvin*, 669 Fed. App'x 31, 32 (2d Cir. 2016)(ALJ properly considered plaintiff's ability to perform daily activities in weighing treating medical source opinion)(unpublished opinion).

## II.   The ALJ's Assessment of The Opinion of Treating Physician Dr. Gbadamosi

Plaintiff also argues that the ALJ erred by declining to grant controlling weight to the opinions of plaintiff's treating primary care physician, Dr. Gbadamosi.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and [is] not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R.

§404.1527(d).[1] Similar factors govern the ALJ's analysis of "other source" opinions. *See Gregory F. v. Commissioner*, 2020 U.S. Dist. LEXIS 229384 at *4-*5 (W.D.N.Y. 2020).

Further, the ALJ must articulate his reasons for the weight he assigns to the medical opinions of record. *See Shaw*, 221 F.3d at 134. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors, and/or to give good reasons for the weight assigned to medical opinions of record, is typically reversible error.

Plaintiff argues that the ALJ erred by granting "greater" or "great" weight to several opinions by Dr. Gbadamosi, rather than "controlling" weight.

In assessing Dr. Gbadamosi's opinions, the ALJ recognized his lengthy treatment history with plaintiff, and fully credited his opinion that plaintiff had moderate limitations in lifting and carrying and climbing stairs and other objects, and must "avoid stressful situations and environment." (Dkt. #6 at 24, 910, 915, 917-18, 921-22, 927-28, 945-46). The exertional RFC determined by the ALJ incorporated these limitations, as well as those opined by reviewing state agency consultant physician Dr. T. Bessent (Dkt. #6 at 887-94) and consulting family physician Dr. Donna Miller (Dkt. #6 at 430-33), and further accounted for additional functional limitations about which plaintiff had testified at the hearing, including the ability to lift 25 pounds, occasional bouts of arthritis during cold or wet weather, and asthma exacerbated by irritants like perfume. (Dkt. #6 at 21).

Any error by the ALJ in declining to grant Dr. Gbadamosi's opinions "controlling" weight rather than "great" weight is, in this case, harmless. The RFC determined by the ALJ includes the limitations in lifting, carrying, climbing, and performing postural activities identified by Dr.

---

[1] Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

Gbadamosi. (Dkt. #6 at 20-21: RFC limited to light work with no more than "occasional" climbing of ramps or stairs, and no climbing of ladders, ropes or scaffolds and no more than occasional stooping, crouching or crawling).

To the extent the RFC determined by the ALJ does not explicitly adopt the references in some of Dr. Gbadamosi's opinions to not sitting or standing for long periods (i.e., needing to change position), and avoidance of large groups, any error therein is similarly harmless, as at least two of the jobs identified by the vocational expert – marker and mail clerk – are consistent with the need to change positions at will, and all three are consistent with social interaction limitations that extend to supervisors and coworkers in addition to the public. (Dkt. #6 at 53: vocational expert testified that all three jobs could be performed by an individual limited to no more than occasional interaction with supervisors, coworkers and the public). *See Robert G. v. Saul*, 2020 U.S. Dist. LEXIS 138114 at *20-*21 (N.D.N.Y.2020)(marker and mail clerk positions do not require any significant interaction with others); *Snyder v. Commissioner*, 2020 U.S. Dist. LEXIS 137780 at *4 (W.D.N.Y. 2020)(marker position consistent with need to change between sitting and standing positions at will); *Walker v. Commissioner*, 2019 U.S. Dist. LEXIS 52201 at *9 (W.D.N.Y. 2019)(marker and mail clerk consistent with need to positions at will); *Morse v. Berryhill*, 2019 U.S. Dist. LEXIS 98657 at *19 (W.D.N.Y.2019)(mail clerk job requires no more than occasional interaction with others); *Almodovar v. Colvin*, 2018 U.S. Dist. LEXIS 10881 at *17 (S.D.N.Y. 2018)(marker and mail clerk consistent with sit/stand option at some level).

Because the ALJ's RFC finding was supported by substantial evidence, and because the same finding of "not disabled" would have resulted regardless of whether the ALJ gave Dr. Gbadamosi's opinions "great" weight or "controlling" weight, I find no basis to remand the matter for further consideration of those opinions.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of reversible legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 11, 2021.